# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| PENN SPECIALTY CHEMICALS, INC., | ) Case No. 01-2254 (    ) |
| | ) |
| | ) Objection Deadline: August 20, 2001 at 4:00 p.m. |
| Debtor. | ) Hearing Date: Negative Notice |

### APPLICATION OF THE DEBTOR AND DEBTOR IN POSSESSION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF RICHARDS, LAYTON & FINGER, P.A. AS CO-COUNSEL TO THE DEBTOR PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE

The above-captioned debtor and debtor in possession (the "Debtor") hereby requests the entry of an order authorizing the Debtor to retain Richards, Layton & Finger, P.A. as bankruptcy co-counsel pursuant to section 327(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1130 (the "Bankruptcy Code"). In support of this Application, the Debtor respectfully represents as follows:

### Jurisdiction

This Court has jurisdiction to consider this application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

The Bankruptcy Case, Jurisdiction and Venue

1. On July 9, 2001 (the "Commencement Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Clerk of this Court. The Debtor has continued in the management and operation of its business and properties as a debtor-

in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

The Debtor and its Business and Operations

2. The Debtor is a privately-held Delaware corporation that manufactures and markets specialty chemicals, including polytetramethylene ether glycol ("PTMEG"), tetrahydrofuran ("THF"), and furfural- and furan-based fine chemicals and solvents. The Debtor sells its chemical products worldwide, and the chemicals are used in a variety of products such as spandex, automotive seating, housing and tubing, industrial belts, aviation hoses, cast polyurethane applications such as in-line-skates, skateboard and scooter wheels, golf balls, PVC cement, and other chemically-based solvents.

3. The Debtor was founded in June 1999 by a group of experienced chemical industry executives, including former key employees from several of this nation's large chemical companies.

4. The Debtor's headquarters are located in Conshohocken, Pennsylvania, and its products are manufactured at a plant in Memphis, Tennessee (the "Memphis Plant").

5. The Debtor owns a German subsidiary, Penn Specialty Chemicals GmbH, in Kunzell, Germany ("Penn Specialty Europe"), and has an operating division in Antwerp, Belgium, that it used primarily for import and export of its chemical products to, and for distribution in, Europe and Asia.

6. The Debtor currently has approximately 165 employees. Annual sales in 2000 were approximately $66.7 million for the Debtor's total operations. The European operations of the Debtor generate approximately 25% of this revenue.

### The Great Lakes Acquisition and the Favorable Lyondell Contract

7. In the June 1999 transaction, the Debtor acquired the furfural and furfural derivatives business of Great Lakes Chemical Corporation and immediately undertook initiatives to streamline and improve the business. To this end, the Debtor discontinued several product lines and switched to a lower cost, higher quality chemical supply source for use in manufacture of its specialty chemicals. The Debtor also divested itself of non-profitable assets. In order to capture a larger percentage of the PTMEG and THF industries, Penn Specialty built a new unit at its Memphis Plant to convert butanediol ("BDO") to THF. This unit came on-line in January 2001 and allows the Debtor to service several of its markets in an effective manner. In addition to improving its production facilities after the acquisition of the Memphis Plant, the Debtor sought to improve customer relationships and improve its international distribution and agent network in order to increase its market share of the global chemical industry. These efforts were fruitful, and the Debtor saw an increase in the number of its customer accounts, an increase in sales and consequently an overall growth in the volume of sales of its products during late 1999 and early 2000.

8. With the added flexibility at the Memphis Plant provided by the new BDO unit, the Debtor is one of the few companies in the world capable of producing THF from a reliable source of either furfural (at the old Memphis Plant production units) or BDO (at the new production unit), depending on specific customer requests or prevailing market conditions. The Debtor is able to successfully utilize its BDO to THF production unit due to a favorably-priced, long-term supply contract and corresponding technology license, which enables the Debtor to maintain an above industry average supply of BDO at below market prices. As a result, the

Debtor has favorable supply conditions relative to its other industry competitors. This flexibility coupled with an increased worldwide demand for spandex-based products has ideally positioned the Debtor to capture a potential increase in revenues over the course of the next five years.

Events Leading to this Bankruptcy Case

9. Despite management's successful efforts to expand its customer base and to make the Memphis Plant one of the most advanced specialty chemical plants in the country, several external factors have combined to cause a significant downturn in the Debtor's business and operations. Certain competitors have engaged in pricing practices which have undercut the Debtor's market. Other market factors, such as the strength of the U.S. dollar, have resulted in either increased costs for the Debtor and/or decreased revenues with respect to certain product lines. Specifically, due to the recent energy crisis and increase in corresponding gas prices, the Debtor has seen its gas bill at the Memphis Plant almost triple. The Debtor has been unable to fully offset these increased production costs with revenues despite implementing several price increases both domestically and abroad. Indeed, with each price increase, the Debtor has seen a slight decrease in sales. This is in part due to a general slowdown in the economy which has had the effect of reducing demand of certain chemicals from significant large buyers. The Debtor's sales have remained relatively flat or even declined for some product lines (as it has seen operating expenses increase). As a result of these factors, the Debtor's business has been unable to generate cash flow sufficient to service the approximately $53 million in secured debt and to pay certain of its trade creditors on a timely basis.

## Retention of Richards, Layton & Finger, P.A.

10. Subject to the approval of this Court, the Debtor wishes to employ Richards, Layton & Finger, P.A. ("RL&F") of Wilmington, Delaware as its bankruptcy co-counsel in connection with the commencement and prosecution of its chapter 11 case, effective as of the commencement of this case. Pursuant to section 327(a) of the Bankruptcy Code, the Debtor requests that the Court approve the employment of RL&F under a general retainer, as its co-counsel, to perform the extensive legal services that will be necessary during the Debtor's chapter 11 case.

11. In addition to RL&F, by separate application previously filed, the Debtor is seeking to employ and retain, pursuant to section 327(a) of the Bankruptcy Code, the law firm of Dechert as co-counsel in this case. The Debtor submits that it is essential for the Debtor to employ co-counsel in this case. Moreover, pursuant to Rule 83.5(e) of the Local Rules of the United States District Court for the District of Delaware, the Debtor is required to retain Delaware counsel. Dechert and RL&F have discussed a division of responsibilities regarding representation of the Debtor and will make every effort to avoid duplication of effort in this case.

12. The Debtor has selected RL&F as its co-counsel because of the firm's extensive experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code and because of its expertise, experience and knowledge practicing before this Court, its proximity to the Court, and its ability to respond quickly to emergency hearings and other emergency matters in this Court. RL&F's appearance before this Court for the miscellaneous applications, motions, and matters in this chapter 11 case will be more efficient and cost effective for the Debtor's estate. Moreover, the Debtor believes

that RL&F is both well qualified and uniquely able to represent it in this chapter 11 case in a most efficient and timely manner.

13. The services of RL&F under a general retainer are necessary to enable the Debtor to execute faithfully its duties as a debtor in possession and to develop, propose and consummate a chapter 11 plan. Subject to further order of this Court, RL&F will be required to render the following professional services:

- (a) to advise the Debtor of its rights, powers and duties as a debtor and debtor in possession;

- (b) to take all necessary action to protect and preserve the Debtor's estate, including the prosecution of actions on the Debtor's behalf, the defense of any actions commenced against the Debtor, the negotiation of disputes in which the Debtor is involved, and the preparation of objections to claims filed against the Debtor's estate;

- (c) to prepare on behalf of the Debtor all necessary motions, applications, answers, orders, reports and papers in connection with the administration of the Debtor's estate;

- (d) to negotiate and prepare on behalf of the Debtor a plan of reorganization and all related documents; and

- (e) to perform all other necessary legal services in connection with the Debtor's chapter 11 case.

14. It is necessary that the Debtor employs attorneys under a general retainer to render the foregoing professional services.

15. RL&F has stated its desire and willingness to act in this case and to render the necessary professional services as co-counsel for the Debtor.

16. To the best of the Debtor's knowledge, the directors and associates of RL&F do not have any connection with or any interest adverse to the Debtor, its creditors or any

other party in interest, or their respective attorneys, except as set forth herein and in the annexed affidavit of Mark D. Collins, a director of RL&F (the "Collins Affidavit").

17.  RL&F intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). The Debtor, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, proposes to pay RL&F its customary hourly rates in effect from time to time as set forth in the Collins Affidavit. The Debtor submits that these rates are reasonable.

18.  Prior to the Petition Date, the Debtor paid RL&F a $75,000 retainer in connection with and in contemplation of the Debtor's chapter 11 filing. The Debtor proposes that the retainer monies paid to RL&F and not expended for prepetition services and disbursements be treated as a retainer paid in contemplation of services to be rendered by RL&F as bankruptcy co-counsel, pursuant to this Application, and that these amounts be applied to services performed in connection with the Court's order authorizing the employment of RL&F.

**Notice**

19.  No trustee, examiner or creditors' committee has been appointed in the Debtor's chapter 11 case. Notice of this Motion has been provided to the Office of the United

States Trustee for the District of Delaware, the agent for the Debtor's primary secured lenders and its counsel, counsel to the Official Committee of Unsecured Creditors, and all parties who have requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002. No previous motion for the relief sought herein has been made to this or any other Court. The Debtor respectfully submits that no further notice of this Motion is required.

20. The Debtor submits that this Motion does not present any novel issues of law requiring briefing. Therefore, pursuant to Rule 7.1.2 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware (the "Local District Court Rules"), incorporated by reference into Del. Bankr. LR 1001-1(b), the Debtor respectfully requests that the Court set aside the briefing schedule set forth in Rule 7.1.2(a) of the Local District Court Rules.

WHEREFORE, the Debtor requests entry of an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief the Court deems just and proper.

Dated: July 31, 2001
Conshohocken, Pennsylvania

Penn Specialty Chemicals, Inc.

_____
Brian F. McNamara
Vice President and General Counsel